

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

# SUPERIOR COURT

## SUMMONS

| | **Civil Action File Number**<br>WC-2019-0544 |
|---|---|
| **Plaintiff**<br>The Washington Trust<br>vs.<br>**Defendant**<br>Td Bank, N.a. | **Attorney for the Plaintiff or the Plaintiff**<br>Ryanna Tyler Capalbo<br>**Address of the Plaintiff's Attorney or the Plaintiff**<br>BILODEAU CAPALBO LLC<br>1350 Division Rd Suite 102<br>WEST WARWICK RI 02893 |
| McGrath Judicial Complex<br>Washington County<br>4800 Tower Hill Road<br>Wakefield RI 02879<br>(401) 782-4121 | **Address of the Defendant**<br>180 Westminster Street Suite 7<br>Providence RI 02903 |

**TO THE DEFENDANT, Td Bank, N.a.:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| This Summons was generated on 10/24/2019. | /s/ Danielle Keegan<br>Clerk |
|---|---|

Witness the seal/watermark of the Superior Court

DATE 10/28/19
A TRUE COPY ATTEST
FRANK V. CATAMERO
R.I. CONSTABLE #6022

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## SUPERIOR COURT

| **Plaintiff**<br>The Washington Trust<br>v.<br>**Defendant**<br>Td Bank, N.a. | **Civil Action File Number**<br>WC-2019-0544 |
|---|---|

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, TD Bank, N.A., by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion ______________________
Address of dwelling house or usual place of abode ______________________
______________________
Age ___________
Relationship to the Defendant ______________________

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent ______________________
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
______________________

☐ With a guardian or conservator of the Defendant.
Name of person and designation ______________________

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation ______________________

STATE OF RHODE ISLAND AND Justice Independence Honor PROVIDENCE PLANTATIONS

JUDICIARY RHODE ISLAND

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation ______________________

☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation ______________________

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent ______________________
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
______________________

☐ I was unable to make service after the following reasonable attempts: ______________________
______________________

| SERVICE DATE: ____/____/____ Month Day Year | SERVICE FEE $________ |
|---|---|
| Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE | |

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

______________________
Signature

State of ______________________
County of ______________________

On this ________ day of ______________, 20____, before me, the undersigned notary public, personally appeared ______________________ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was ______________________, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: ______________________
My commission expires: ______________________
Notary identification number: ______________________



See this notice in Cambodian, Spanish, and Portuguese on the attached pages.
Español: Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.
Português: Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# NOTICE

## You have a case in the Rhode Island state court system.

## You have the right to an interpreter at no cost to you.

Rhode Island Supreme Court Executive Order 2012-05 states that when a Limited-English Proficient (LEP) person appears in court, the Rhode Island Judiciary will provide a free authorized interpreter for the defendant, plaintiff, witness, victim, parent of a juvenile, or someone with a significant interest in the court proceeding. This interpreting service is provided at no cost to the parties and in all types of cases, both civil and criminal. Court interpreters work in all the courthouses of the Rhode Island state court system.

To schedule an interpreter for your day in court, you have the following options:

1. Call the Office of Court Interpreters at (401) 222-8710, or
2. Send an email message to interpreterfeedback@courts.ri.gov, or
3. Visit the interpreters' office to schedule an interpreter:

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor, Room 401
250 Benefit Street
Providence, RI 02903

When requesting an interpreter, please provide the following information:

- The name and number of your case
- The language you are requesting
- The date and time of your hearing
- The location of your hearing
- Your name and a telephone number where we can reach you or your lawyer

For more information in Portuguese, Russian, and Spanish, including a listing of court forms that are available in Spanish, please visit our website on the internet:
http://www.courts.ri.gov/Interpreters/englishversion/default.aspx.

To request a translation of this notice into any other language, please call the Office of Court Interpreters at (401) 222-8710. It would be helpful to have an English speaker with you when you call.

The Rhode Island Judiciary is committed to making the courts accessible to all.

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

See this notice in Cambodian, Spanish, and Portuguese on the attached pages.
Español: Véase esta notificación en camboyano, español y portugués en las páginas adjuntas.
Português: Leia esta notificação em cambojano, espanhol e português nas páginas em anexo.

# AVISO

## Usted tiene un caso en el sistema judicial de Rhode Island.

## Usted tiene el derecho a tener un intérprete sin costo para usted.

La Orden Ejecutiva 2012-05 del Tribunal Supremo de Rhode Island dicta que cuando una persona que tiene un dominio limitado del inglés (LEP) comparece ante la corte, el Sistema Judicial de Rhode Island le proveerá un intérprete autorizado gratis sea el acusado/demandado, demandante, testigo, víctima, padre de un menor de edad, alguien que tenga con un interés importante en el proceso de la corte. Este servicio de interpretación se le proveerá sin costo alguno a los participantes en toda clase de caso, sea civil o penal.
Los intérpretes judiciales trabajan en todos los tribunales del Sistema Judicial de Rhode Island.

Para solicitar un intérprete para su comparecencia en el tribunal, usted tiene las siguientes opciones:

1. Llamar a la Oficina de Intérpretes en el tribunal al 401-222-8710;
2. Mandar un correo electrónico a interpreterfeedback@courts.ri.gov; o
3. Presentarse a la Oficina de Intérpretes para solicitar un intérprete:

The Office of Court Interpreters
Licht Judicial Complex
Cuarto Piso, Oficina 401-A-B.
250 Benefit Street
Providence, RI 02903

Al solicitar un intérprete, por favor provea la siguiente información:

- El nombre y el número de su caso
- El idioma que solicita
- La fecha y hora de su audiencia
- Dónde va a tomar lugar su audiencia
- Su nombre y número de teléfono por el cual nos podamos poner en contacto con usted o con su abogado.

Para obtener más información en portugués, ruso o español, incluyendo una lista de formularios de la corte que están disponibles en español, visite nuestra página de internet:

http://www.courts.ri.gov/Interpreters/englishversion/default.aspxi.

Para solicitar la traducción de este aviso en cualquier otro idioma, por favor llame a la oficina de intérpretes al (401) 222-8710. Ayudaría si usted puede estar en compañía de una persona que habla inglés cuando llame.

El sistema jurídico de Rhode Island se compromete a proporcionar a todas las personas mejor acceso a los tribunales.

The Office of Court Interpreters
Licht Judicial Complex
Fourth Floor Room 401
250 Benefit Street
Providence, RI 02903

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

STATE OF RHODE ISLAND
WASHINGTON, SC

SUPERIOR COURT

THE WASHINGTON TRUST COMPANY,
Plaintiff,

vs. C.A. NO.

TD BANK, N.A.,
Defendant.

COMPLAINT

PARTIES

1. Plaintiff, The Washington Trust Company ("WTC or Plaintiff"), is a Rhode Island financial institution, with a place of business located at 23 Broad Street, Westerly, Rhode Island 02891.

2. Defendant, TD Bank, N.A. f/k/a Banknorth, N.A. successor by merger to Boston Federal Savings Bank ("TD Bank" or "Defendant"), upon information and belief, is a National Banking Association, with an address located at 180 Westminster Street, Suite 7, Providence, Rhode Island 02903.

JURISDICTION

3. The amount in controversy exceeds the sum of $10,000 and the jurisdictional requirement of this Court as set forth in R.I.G.L. §8-2-14.

4. TD Bank has sufficient contacts with the State of Rhode Island for this Court to exercise personal jurisdiction over it and the within legal action arises directly from its contacts within the forum State.

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

The Washington Trust Co. v. TD Bank, N.A.
Complaint
Page 2 of 9

BACKGROUND

5. On or about April 29, 2002 TD Bank entered into an agreement with WTC ("Agreement"), pursuant to which WTC purchased a Loan from TD Bank to Stephen Stenson ("Borrower") dated on or about October 14, 2003 (the "Loan"). The Loan is evidenced by a Fixed / Adjustable Rate Note in the original principal amount of Four Hundred Ninety Thousand and 00/100 ($490,000.00) Dollars ("Note") and secured by a first priority mortgage on the real property owned by the Borrower ("Mortgage") located at 45-47 Lewis Road, Belmont, Massachusetts 02478 ("Property"). A copy of the Agreement is attached hereto as Exhibit A.

6. Upon information and belief, the Borrower defaulted in his obligations under the Note and Mortgage.

7. WTC, directly and through counsel, made numerous attempts over several months to communicate with TD Bank inquiring about the delinquency of the Loan and enforcement of the Mortgage, to no avail.

8. Upon information and belief, in July 2019, WTC was made aware that TD Bank had paid approximately $48,000 in delinquent real estate taxes on the Property without consulting with WTC or even notifying WTC.

9. Upon information and belief, the Borrower's Loan was financed as a primary residence; however, the Borrower is using the Property as an investment property.

10. Upon information and belief, the Borrower is delinquent on the Note as the last payment made by Borrower on the Note was on or about January 1, 2019.

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.
The Washington Trust Co. v. TD Bank, N.A.
Complaint
Page 3 of 9

11. Upon information and belief, as of the date herein, the outstanding arrears due under the Note totals $33,152.31.

12. Upon information and belief, as of the date herein, the outstanding indebtedness due under the Note totals $370,890.12.

13. WTC initiates foreclosure at ninety (90) days delinquency on investment properties.

14. As of the date herein, upon information and belief, there remains outstanding arrears owed by the Borrower under the Note and TD Bank has not commenced foreclosure proceedings.

15. TD Bank has failed to fulfill its obligations under the Agreement for, inter alia, its failure to proceed with foreclosing the Mortgage on the Property.

16. Specifically, TD Bank has breached its obligations to WTC by its mis-servicing of deliverables for its failure to service the loan in accordance with the Agreement under the following:

a. ***Section 2.10. "Notification Requirements.*** *Seller shall have a duty to use due diligence to ascertain, and forthwith to notify, either directly or through the Servicer, Buyer of any failure of any loan debtor to perform a material obligation under the applicable loan, and also of any of the following which might come to the attention of the Seller or its designated Servicer:*

    i. *(c) The. . . insolvency . . .of any loan debtor which might impair ability to repay the loan; . . .*

b. ***Section 2.11. "Servicer's Duties in the Event of Default by Loan Debtor.*** *The Servicer will, upon the request and under the direction of the Buyer, assist in foreclosure or other acquisition of the property securing any Mortgage Loan, the transfer of such property to a private mortgage insurer, as applicable, and the collection of any applicable mortgage insurance proceeds and pending completion of these steps,*

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.
The Washington Trust Co. v. TD Bank, N.A.
Complaint
Page 4 of 9

*take such actions as are customary in the industry, to protect such property from waste, vandalism or deterioration."*

c. ***Section 2.01. "Servicing Responsibilities.*** *"The Seller hereby assumes the responsibility for administering and servicing the loan(s) hereunder, as specified in this Agreement, and shall retain such responsibility while this Agreement remains in effect, or until with the prior written consent of the Buyer designates a new Servicer. The term "Servicer," herein, shall refer to the person or firm actually performing the servicing function, either the Seller, or person or firm designated in Section 1.02(b). The Seller warrants that Servicer will exercise the same degree of care that the Seller exercises with respect to the administration and servicing of loans for the Seller's own account. The Seller shall be reasonable for . . . for preserving all rights in said loan(s) and administering it (them) in all respects consistent with applicable law and regulations, and for servicing the same in a manner consistent with the standards of the secondary mortgage market."*

17. Pursuant to the Agreement, TD Bank agreed to, inter alia, administer and service the Loan.

18. The Agreement provides that in the event of a breach by TD Bank for its failure to service the loan in material compliance with the terms of this Agreement, TD Bank shall repurchase the Loan as follows:

*a.* ***Section 6.01(b). "Agreement to Repurchase Loan(s).***

*i.* *(a) "Misstatement of material Fact. The Seller agrees, upon Buyer's written request made within 12 months from the date of the pertinent Loan Identification Schedule, to repurchase Buyer's interest(s) in the pertinent loan(s), if any misstatement of material fact, intentional or otherwise, by Seller or loan debtor(s), is disclosed . . . Seller Shall repurchase said loan(s) within 30 days from receipt of Buyer's written request for such repurchase. . . . "*

*ii.* *(b) "Breach of Covenant(s). Subject to Section 4.02 of this Agreement, if Seller or Servicer breaches any covenant made in this Agreement regarding a loan(s) the Buyer has purchased, Seller shall repurchase the loan(s) within 30 days*

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.
The Washington Trust Co. v. TD Bank, N.A.
Complaint
Page 5 of 9

*from receipt of Buyer's written request for such repurchase. . . .*"

19. In excess of thirty (30) days of notifying TD Bank of its failures and deficiencies under the Agreement, on or about August 12, 2019, as a result of TD's breach of the Agreement, and in accordance with the terms of the Agreement, WTC by and through its counsel, sent to TD Bank a demand to repurchase the Loan ("Repurchase Demand").

20. Despite WTC's demand, TD Bank failed and refused to repurchase the Loan in accordance with the terms of the Agreement.

COUNT I – (Breach of Contract)

21. WTC incorporates by reference the allegations in paragraphs one (1) through 20 above as if fully set forth and realleged herein.

22. On or about April 29, 2002 TD Bank entered into an Agreement with WTC, pursuant to which TD Bank agreed to sell and service the Loan from TD Bank to Borrower.

23. Pursuant to the Agreement, in the event that TD Bank breached any of the covenants contained in the Agreement, including without limitation, the covenant to commence foreclosure proceedings in the event payment under the Loan remained delinquent for such a period provided in the Servicing Guidelines, TD Bank agreed unconditionally, to repurchase the Loan from WTC.

24. Pursuant to the Agreement, in the event that TD Bank breached any of the covenants contained in the Agreement, including without limitation, the covenant to

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.
The Washington Trust Co. v. TD Bank, N.A.
Complaint
Page 6 of 9

proceed diligently in accordance with the Agreement to collect all payments due under the Loan, TD Bank agreed unconditionally, to repurchase the Loan from WTC.

25. WTC demanded that TD Bank repurchase the Loan pursuant to the Agreement.

26. TD Bank failed and refused to repurchase the Loan pursuant to the terms of the Agreement.

27. As a direct and proximate result of said breach, WTC has suffered damages. Those damages include, without limitation, loss of monies, and fees and expenses incurred.

WHEREFORE, WTC demands that this Court enter judgment in favor of WTC and against TD Bank for compensatory damages plus interest, costs and the reasonable attorneys' fees and expenses incurred by WTC pursuant to the Agreement and as set forth in R.I.G.L. §9-1-45, and any other and further relief this Court deems meet and just.

COUNT II (Breach of Good Faith and Fair Dealing)

28. WTC incorporates by reference the allegations in paragraphs one (1) through 27 above as if fully set forth and realleged herein.

29. In every contract, there exists an obligation of good faith and fair dealing.

30. TD Bank acted in bad faith and unfairly and breached its respective obligations of good faith and fair dealing.

31. As a direct and proximate result of said breach, WTC has suffered damages. Those damages include, without limitation, loss of monies, and fees and expenses incurred.

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

The Washington Trust Co. v. TD Bank, N.A.
Complaint
Page 7 of 9

WHEREFORE, WTC demands that this Court enter judgment in favor of WTC

and against TD Bank for compensatory damages plus interest, costs and the reasonable

attorneys' fees and expenses incurred by WTC pursuant to the Agreement and as set forth

in R.I.G.L. §9-1-45, and any other and further relief this Court deems meet and just.


COUNT III – (Breach of Contract-Servicing)

32.     WTC incorporates by reference the allegations in paragraphs one (1)

through 31 above as if fully set forth and realleged herein.

33.     On or about April 29, 2002 TD Bank entered into an Agreement with

WTC, pursuant to which TD Bank agreed to service the Loan from TD Bank to

Borrower.

34.     TD Bank was obligated to service the Loan in accordance with the terms

of the Agreement.

35.     As part of the Agreement, upon default of the Borrower, TD Bank was

obligated to facilitate and arrange for default remedies, including without limitation,

foreclosure proceedings.

36.     As of the date herein, there remains outstanding arrears owed by the

Borrower under the Note and TD Bank has failed to take any action under the Agreement

to collect any and all payments due under the Note.

37.     TD Bank failed to exercise the proper care in servicing the Loan and

breached its obligation to WTC under the Agreement.

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

38. As a direct and proximate result of said breach, WTC has suffered damages. Those damages include, without limitation, loss of monies, and fees and expenses incurred.

WHEREFORE, WTC demands that this Court enter judgment in favor of WTC and against TD Bank for compensatory damages plus interest, costs and the reasonable attorneys' fees and expenses incurred by WTC pursuant to the Agreement and as set forth in R.I.G.L. §9-1-45, and any other and further relief this Court deems meet and just.

## COUNT IV – (Breach of Contract and Request for Declaratory Relief and Damages against TD Bank)

39. WTC incorporates by reference the allegations in paragraphs one (1) through 38 above as if fully set forth and realleged herein.

40. TD Bank has failed and refused to repurchase the Loan pursuant to the terms of the Agreement.

41. TD Bank has breached its contractual obligations to WTC.

42. As a direct and proximate result of said breach, WTC has suffered damages. Those damages include, without limitation, loss of monies, and fees and expenses incurred.

WHEREFORE, WTC demands that this Court:

a. Declare that TD Bank has an obligation to repurchase the Loan from WTC;

b. Declare that TD Bank has breached its obligations to WTC by failing to proceed diligently in accordance with the Agreement to collect all payments due under the Loan, including without limitation, commencing foreclosure proceedings;

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

The Washington Trust Co. v. TD Bank, N.A.
Complaint
Page 9 of 9

    c.   Declare that TD Bank has breached its obligations to WTC by its failure and refusal to repurchase the Loan from WTC pursuant to the terms of the Agreement;

    d.   Enter judgment in favor of WTC and against TD Bank awarding damages in an amount to be determined by this Court, plus reasonable attorneys' fees and costs pursuant to the Agreement and as allowed by law;  and

    a.   Grant to WTC such other and further relief as this Court deems just and proper.

Respectfully Submitted

THE WASHINGTON TRUST COMPANY
By its Attorneys,

  /s/ Ryanna T. Capalbo
Andrew R. Bilodeau, Esq. #7174
Ryanna T. Capalbo, Esq. #8314
**BILODEAU CAPALBO, LLC**
1350 Division Road, Suite 102
West Warwick, RI  02893
(401) 300-4055
(401) 633-7511
Email: rcapalbo@bilodeaucapalbo.com
Dated: October 21, 2019

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

EXHIBIT A 

# WHOLE LOAN SALE AND SERVICING AGREEMENT

("Primary Sales Transaction, "i.e., between "Seller and first "Buyer")

THIS WHOLE LOAN SALE AND SERVICING AGREEMENT (the "Agreement") is made in the Commonwealth of Massachusetts between ███████████████ (the "Seller") and The Washington Trust Company (the "Buyer") for mutual considerations herein evidenced.

This Agreement governs the sale, assignment and transfer by the Seller to the Buyer of Adjustable rate mortgage loans ("loan" or "loans") secured by real estate, all as identified in "Loan Identification Schedule(s)" attached to this Agreement, and the servicing and other incidents thereof. Under this Agreement, from time to time the Seller may offer to sell and the Buyer may agree to buy additional loans. Each loan sold hereunder shall be subject to the warranties, representations, and agreements made by the Seller herein. Such warranties and representations are made for the benefit of the Buyer and its successors and assignees.

## ARTICLE I
### Sale and Transfer of Ownership in Loans

Section 1.01. Sale and Identification of Ownership Interests. The Seller hereby agrees to sell to Buyer and Buyer hereby agrees to buy from Seller the ownership interests in the loans identified in the Loan Identification Schedule(s) in the form attached hereto as an Exhibit(s) and issued pursuant to this Agreement. The Loan Identification Schedule(s) will specify, among other things, the identification of the loans(s) sold, the servicing fee, the name of the loan debtor(s), date(s), of the mortgage(s) recordation and the name of the Servicer, if it is not to be the Seller of the loan(s).

Section 1.02. Warranties and Representations.

(a) Seller's Ownership of Loan(s) and Compliance with Applicable Law. The Seller hereby represents and warrants that as of the date the Buyer buys said loan(s) and is issued a Loan Identification Schedule(s) under this Agreement in evidence thereof, all loans described in such Loan Identification Schedule(s) are loans solely owned by the Seller, such loans have been duly executed and acknowledged by the debtor(s), and Seller's first lien on the pertinent security property has been recorded; such loans have been made or acquired by Seller pursuant to and in compliance with all applicable federal and state laws, rules, and regulations as from time to time amended; all conditions within the control of the Seller and the Servicer, as defined in Section 1.02(b), as to the validity of the applicable insurance by the mortgage insurance companies or other insurers, have been properly satisfied, and said insurance is valid and enforceable; and that all copies of any documents used in connection with this transaction are accurate and complete. There is in force a paid-up title insurance policy on each loan issued by a title company approved by Seller in an amount at least equal to the outstanding principal balance of the loan, assigned to Buyer, valid, sufficient and enforceable against Seller and the loan debtor. Seller further assigns to Buyer a security interest in any proceeds the Seller receives from title insurance on the real estate.

1

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

(b) Possession of Loan Documentation. Seller further represents and warrants that it is authorized to sell the loan(s) described in ARTICLE I, Section 1.01, of this Agreement; that Seller will do all acts necessary to perfect ownership of the loan(s) sold under this Agreement in Buyer; and that Seller or its designated Servicer (____N/A_______) has in its possession all documents representing each such loan and all records required to be maintained for such loan(s), under applicable law and regulations, including, but not limited to: (1) loan application signed by loan debtors(s); (2) note or other evidence of debt signed by loan debtor(s) and properly endorsed by Seller in accordance with applicable regulations; (3) copy of security instrument, including any documents, instruments and fees necessary to record and perfect ownership in the Buyer, any modification agreement(s) and a statement signed by the loan debtor disclosing the purchase price of the security property; (4) an appraisal or signed report of certification of valuation made in compliance with the requirements of the Director of the Office of Thrift Supervision (OTS) and/or Federal Deposit Insurance Corporation (FDIC); (5) loan debtor's (s') financial statement(s) or written credit report(s); (6) documentation customarily used in the jurisdiction in which the real property is located indicating the validity of Seller's first lien; (7) applicable taxes, assessments and insurance premium payment record(s); (8) hazard insurance policy in an amount representing coverage at least equal to the outstanding principal balance or the full insurable value of the improvements, whichever is less, which covers such peril as are commonly covered in policies described as "Standard Fire and Extended Coverage," as well as other perils as to which institutional lenders operating in the same area commonly require hazard insurance (such hazard insurance policies or premium payment records referred to in item 7 are not required if the Seller has blanket mortgages interest insurance policies meeting applicable OTS regulations and requirements) and which provides that the Seller's hazard insurance is not invalidated by acts of the loan debtor's(s'); (9) such flood insurance policy as is required under the Flood Disaster Protection Act of 1973, as amended and the National Flood Insurance Reform Act of 1994, and implementing and other regulations; and (10) documentation showing loan originators and, if applicable, Seller's compliance with pertinent adjustable mortgage loan disclosure laws and regulations.

(c) Delivery of Copies of Loan Documents. The Seller promptly shall deliver to Buyer copies of the following documents pertaining to each loan sold under this Agreement: (1) loan application signed by loan debtor(s); (2) a certified copy of the security instrument; (3) an appraisal or signed report of certification of valuation made in compliance with the requirements of the applicable OTS regulations; (4) loan debtor's (s') financial statement(s) or written credit report(s); (5) documentation customarily used in the jurisdiction in which the security property is located indicating validity of Seller's first lien; (6) the loan originator's underwriting standards; and (7) documentation showing loan originators and, if applicable, Seller's compliance with pertinent adjustable mortgage loan disclosure laws and regulations.

(d) Delivery of Original Loan Documents. In addition to the copies of the documents described in Section 1.02(c), the following original documents pertaining to this transaction shall be delivered promptly to Buyer: (1) properly signed duplicate original of this Agreement; (2) a statement of the loan's current status as to scheduled periodic payments as of the time of sale; (3) note or other evidence of debt signed by loan debtor(s) and properly endorsed by Seller in accordance with applicable law and regulations; (4) assignments of security instrument,

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

properly recorded if recordation is required in the jurisdiction in which the security property is located in order to perfect ownership to the loan in the buyer; and (5) certified copy of the Seller's resolution authorizing sale of the loan(s).

(e) Custody of Loan Documents; Indication of Ownership. It is agreed that the Seller shall cause the Servicer to retain the physical possession of documents as set forth in Section 1.02(b), except as provided for in Section 1.02(d) of this Agreement. Also, the Seller shall keep all Servicer loan files appropriately marked to indicate Buyer's or its successor's(s') or assignee's(s') ownership of such loans.

(f) Seller Representations Regarding Loan Ownership. Neither the Seller nor Servicer shall represent to anyone that Seller nor Servicer owns any portion of the loan(s) sold under this Agreement. The Seller will reflect the transaction hereunder on its balance sheet and other financial statements as a purchase of assets by the Buyer and a sale of assets by the Seller.

(g) Rights of Inspection. Buyer or its representative, or Buyer's successors or assignees, including the Director of the Office of Thrift Supervision (OTS) and its examiners or supervisory agents, or the Federal Deposit Insurance Corporation (FDIC) and its examiners or supervisory agents, or the Commissioner of Banks of the Commonwealth of Massachusetts, has the right at any reasonable time during normal business hours to request, and have access to and examine any and all books, records and documents relating to any loan in which the Buyer has an ownership or relating to any of the matters covered by this Agreement.

(h) Other Warranties and Representations. Seller further represents and warrants that as of the date of the Loan Identification Schedule(s) identified in ARTICLE I, Section 1.01, of this Agreement; as to each loan: (1) the full principal amount of the loan has been advanced to the loan debtor, and the loan is current as to scheduled periodic payment; (2) the unpaid principal amount is as stated and all costs, fees and expenses incurred in making, closing and recording the loan have been paid; (3) there are no delinquent taxes or assessment liens, or mechanics' liens on the security properties; (4) the security properties are free of substantial damage and are in good repair and no part of the security property for the loan has been released from the lien of the mortgage and the loan has in no way been modified; (5) none of the loans are pledged as collateral for any loan or for any other purpose; and (6) all representations as to each such loan are true and correct.

(i) Buyer as Owner of Loan(s). Upon the Buyer's payment of the purchase price for the ownership interest in any loan, buyer shall immediately become vested with ownership of the loan, and any and all of the documents of every nature in the possession of the Seller and Servicer relating to such loan. Seller agrees to do all acts necessary to perfect title to the loans in the Buyer.

(j) Non-Solicitation: Buyer acknowledges and agrees that the borrowers identified in Exhibit A and any amendment attached hereto are customers ( the "Borrowers") of the Seller. As such, during the term of this Agreement, Buyer agrees not to solicit Borrowers, either directly or indirectly, for deposit, loan or any other banking services.

## ARTICLE II
### Administration and Servicing of the Loans

Section 2.01. Servicing Responsibilities. The Seller hereby assumes the responsibility for administering and servicing the loan(s) hereunder, as specified in this Agreement, and shall retain such responsibility while this Agreement remains in effect, or until with the prior written consent of the Buyer designates a new Servicer. The term "Servicer," herein, shall refer to the person or firm actually performing the servicing function, either the Seller, or person or firm designated in Section 1.02(b). The Seller warrants that Servicer will exercise the same degree of care that the Seller exercises with respect to the administration and servicing of loans for the Seller's own account. The Seller shall be responsible for the execution of any and all notices, and other acts necessary to transfer ownership of the loan(s) sold under this Agreement to the Buyer, Buyer's successors, or Buyer's assignees, as the case may be, and for preserving all rights in said loan(s) and administering it (them) in all respects consistent with applicable law and regulations, and for servicing the same in a manner consistent with the standards of the secondary mortgage market. The Seller represents that within 90 days following the end of its fiscal year it will provide Buyer or Buyer's successors or assignees, as indicated on the Seller/Servicer's books and records, with Seller's certified annual financial statement for that fiscal year.

Section 2.02. Remittance and Reporting. The Servicer shall segregate, report and remit to Buyer and its successors and assignees registered on Servicer's books and records, by the 5th business day (remittance date) following each month's "Cutoff Date" (next described), its or their share of principal and interest collections received by Servicer through the Cutoff Date. The Cutoff Date is that day of each month through which all principal and interest collections are accumulated and totaled for reporting the remittance purposes under this Agreement, and shall be the 30th day of each month. Should the above-designated Cutoff Date fall on a day other than a normal business day, it is understood that the Cutoff Date will be the business day immediately preceding the regular Cutoff Date. In the event that such remittance is not received by Buyer, or its successors or assignees, by the remittance date, Servicer shall be subject to a late charge of 18% per annum of the amount of such remittance not received for the number of days past the remittance date; and such charge shall be payable on demand by Buyer.

Section 2.03. Loan and Other Prepayments. In the event that a prepayment in full is made on any loan, the Servicer shall segregate and deliver, within 5 business days to the Buyer the amount of principal prepaid and any prepayment penalty assessed and collected, provided that the Servicer shall assess and collect the maximum amount of prepayment penalty authorized under the terms of the applicable mortgage instrument and in accordance with applicable law, rules, and regulations as from time to time amended. All other prepayments shall be remitted to Buyer(s) hereunder by the next remittance date as specified in Section 2.02. If Buyer does not receive within the period specified such collected prepayment and any prepayment penalty, Servicer shall be subject to a late charge of 18% per annum of the prepayment and any prepayment penalty not received for the number of days past the remittance date; and such late charge shall be payable on demand by Buyer. Funds received on the account of the loan debtor for the purpose of paying taxes, assessments, insurance premiums, or other similar purpose shall be retained and disbursed by the Servicer as required by the applicable loan documents.

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

Section 2.04. Servicer's Authority. It is agreed that the exclusive right to decide how the loans sold under this Agreement shall be serviced and what to do and how to do it, with the exception of the right to approve assumptions, is hereby vested in the Seller subject to ARTICLE II of this Agreement, with the understanding that servicing standards employed by the Seller generally conform to the standards acceptable to the Federal National Mortgage Corporation and/or the Federal Home Loan Mortgage Corporation. Seller warrants that Servicer will not waive or modify any right, term or provision of any loan contract under this Agreement, including the right to exercise the due-on-sale clause, without the prior written consent of the Buyer. The Servicer shall deposit all funds received on behalf of the loan(s) sold under this Agreement in a segregated trust or custodial demand deposit account in an insured depository institution. Such account shall be held by the Servicer as trustee or custodian who shall maintain detailed records to show the respective interests of each individual loan debtor in the account. Each such account shall be established and maintained in the manner, which complies with the applicable rules and regulations of the Federal Deposit Insurance Corporation (FDIC), for federally insured institutions.

Section 2.05. Indexed Loan Adjustments. The Servicer is authorized and required to make loan adjustments in compliance with the loan contract and applicable regulatory lending requirements, and shall reflect the movement of the applicable loan index, combination of indexes or a moving average of index values or other applicable formula or schedule. The pertinent loan adjustments shall be implemented in accordance with the applicable lending regulations and loan contract. The Servicer has the responsibility for the execution and timely delivery of all appropriate notices required by the applicable lending and disclosure regulations and loan contract regarding such adjustments. If the loan debtor on any loan hereunder is in default at the time such notices are executed and delivered to such loan debtor, the Servicer shall have the responsibility for the timely execution and delivery to the loan debtor of notice that all contractual rights under the applicable loan contract in regard to such default are reserved even though the loan is adjusted. Servicer warrants that if it fails to make a loan adjustment(s) as provided for by the loan contract(s) and as required above, the Servicer shall remit in accordance with Section 2.02 an amount equal to the principal and interest payments that would have been collected if the Servicer had made the loan adjustment(s) in a timely fashion.

Section 2.06. Records Maintenance and Reporting Requirement. The Seller, when servicing the loans, shall be responsible for maintaining, or requiring the maintenance of, a complete set of books and records, as to the loan(s) purchased by the Buyer under this Agreement, including, but not limited to, a record of each receipt and each disbursement, and for assuring that such books and records are sufficient to enable buyer to meet applicable regulatory requirements, and for making sure that the customary monthly report and remittances are furnished the Buyer and that such reports are accompanied by a monthly report of loan delinquencies, separately indicating: (1) the number and aggregate principal amount of loans delinquent one month and two or more months; (2) the value, as determined by an appraisal made in compliance with applicable OTS regulations, of any real estate acquired through foreclosure or a deed in lieu of foreclosure; and (3) the aggregate principal amount of loan categorized separately by the type of real estate security owned by the Buyer under this Agreement. Such reports shall be made and transmitted along with the collections and within the time frames set forth in Section 2.02. In addition, at least annually, an accounting of the balances in each trust or custodial account together with a certificate that all disbursements were

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

made for proper purposes and all payments required to be made hereunder have been made with exceptions noted, if any, shall be submitted to the Buyer.

Section 2.07. Additional Advances for Taxes and Insurance. It is agreed that the Servicer, in its discretion, may make additional advances on loans for taxes and insurance premiums as provided in the pertinent security agreement. Upon making such advances, Servicer shall bill buyer for the amount of funds advanced. The term "advances" as used in this section shall not include tax and insurance payments, which were not current on the date of the sale of the loan(s) as, warranted in Section 1.02(h)(2) of this Agreement.

Section 2.08. Servicer's Fees.

(a) Servicer's "Ordinary" Fees. The Servicer shall receive a service fee of .25 (one quarter) of one percent per annum, for all fixed rate mortgage loans serviced pursuant to this Agreement, of the outstanding balance for the servicing of said loan(s). The Servicer shall receive as its servicing fee all yield in excess of the required initial pass-through rate (as stated in the attachment Commitment Letter) to Buyer for all adjustable rate mortgage loans serviced pursuant to this agreement. In no event will the servicing fee prior to the first interest rate adjustment be less than .25 (one quarter) of one percent per annum. The Servicer shall receive as its servicing fee after the first interest rate adjustment a service fee of .375 (three-eighths) of one percent per annum, of the outstanding balance for the servicing of said loan(s). Said servicing fee shall be deducted from each monthly remittance due the buyer. In addition, if the Buyer should sell participating interest in any of the loans covered by this Agreement to one or more than one buyer (whether such resales are by the Buyer or the Buyer's successors, assignees), and the records of the Servicer are changed to accommodate such a sale, then in addition to the normal servicing fee of .25 (one quarter of one percent per annum) (or .375, as the case may be) an additional service fee shall be deducted from each monthly remittance to a subsequent buyer as described in Article III, Section 3.02 of this Agreement. The Servicer shall also receive and retain any default penalties or late charges and other amounts payable by the loan debtors except for the prepayment penalty, as provided in Section 2.03.

(b) Servicer's "Extraordinary" Costs. The Servicer acknowledges that for the ordinary service fee payable as provided for in Section 2.08(a), it will be responsible for the servicing of loan(s) sold under this Agreement. It is also agreed that any necessary extraordinary services which may be proper under this Agreement, including, but not limited to, the foreclosure of mortgages, property maintenance and improvements, property management, the sale of any foreclosed real estate, requests for special reports not customarily provided by Servicer and similar extraordinary expenses shall be contracted for or done by the Servicer at its customary cost for said services provided such cost is reasonable and customary in a jurisdiction where the real estate is located, and that the Servicer shall bill the buyer for such extraordinary expenses incurred. It is further agreed any such billing of extraordinary services shall not be for an amount less than $100.00; provided that such amounts shall be aggregated until they total the amount designated above or this Agreement is terminated at which time they will be billed to Buyer.

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

Section 2.09. Assumption Fees. When a loan covered by this Agreement is assumed by a third party, the Servicer shall receive $150.00 of any assumption fee collected on such loan. Buyer (or Buyer's successors or assignees) promptly shall receive any amount in excess of the amount set forth above. Buyer reserves the right to amend its assumption fee schedule at any time, and shall be under no obligation to increase Servicer's fee beyond the amount stated above.

Section 2.10. Notification Requirements. Seller shall have a duty to use due diligence to ascertain, and forthwith to notify, either directly or through the Servicer, Buyer of any failure of any loan debtor to perform a material obligation under the applicable loan, and also of any of the following which might come to the attention of the Seller or its designated Servicer:

(a) The abandonment of any premises securing a loan sold under this Agreement;
(b) The sale or transfer of any such premises;
(c) The death, bankruptcy, insolvency or other disability of any loan debtor which might impair ability to repay the loan;
(d) Any loss or damage to any such premises in excess of $3,000.00 in which event, in addition to notifying Buyer, Seller shall see to it that the insurance companies concerned are properly notified;
(e) any lack of repair or any other deterioration or waste suffered or committed in respect to the premises securing the loan; and,
(f) Any event specified in ARTICLE IV;

It is understood, however, that no notice need be given to the Buyer of any facts other than those of which Seller or Servicer shall have actual notice or, except for its negligence, would have had notice.

Section 2.11. Servicer's Duties in the Event of Default by Loan Debtor. The Servicer will, upon the request and under the direction of the Buyer, assist in the foreclosure or other acquisition of the property securing any Mortgage Loan, the transfer of such property to a private mortgage insurer, as applicable, and the collection of any applicable mortgage insurance proceeds and pending completion of these steps, take such actions as are customary in the industry, to protect such property from waste, vandalism or deterioration. In any foreclosure proceeding, the Servicer will take title to the Mortgaged Property in the name designated by the Buyer if it is the successful bidder at the foreclosure sale. The Buyer agrees promptly to reimburse the Servicer for its reasonable out-of-pocket expenses incurred in the foreclosure and other activities referred to herein, including attorney fees in accordance with the FNMA guide.

If requested by the Buyer and, subject to the Buyer and the Servicer reaching agreement on the compensation to be paid to the Servicer therefor, the Servicer will market, manage, operate, improve, rent and sell (hereinafter collectively referred to as the "marketing operations") any property acquired pursuant to foreclosure or other default proceedings in a reasonable, prudent manner in order to minimize loss or expense to Buyer with respect to such property. All these marketing operations shall be on terms and as determined and directed by the Buyer from time to time with the consent of the Servicer.

The compensation to the Servicer for work performed under this paragraph shall be reasonable and customary for such services at the time of performance thereof and in the same geographic area as the subject property, as determined by the mutual written agreement of the Buyer and the Servicer.

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

The Buyer, in addition, shall promptly reimburse the Servicer for all out-of-pocket expenses incurred by it in performing the services, which are the subject of this Section. Upon the sale of such property, on terms as specified by the Buyer, if payments are deferred and payable under a contract or mortgage, the Servicer will service the same until completely liquidated, upon the terms and for the compensation provided herein for the servicing of Loans.

## ARTICLE III
## Transferability and Sale of Ownership Interests to Third Parties

Section 3.01. Authority to Transfer Ownership Interests. In the event Buyer sells all or any part of its interest in the loans to a third party or parties, such third parties shall succeed to all of the rights of Buyer hereunder for the portion purchased and this Agreement shall remain in full force and effect with respect thereto. Ownership Interest(s) in the loan(s) subject to this Agreement is (are) transferable upon the books and records of the Servicer, and no Ownership interest in any loan subject to this Agreement shall be sold in an amount which represents less than a 45% interest in the outstanding balance of such loan. After any such sale of ownership interest in a loan pursuant to this Agreement, the buyer and any other holders of ownership interest in the same loan will be ratably concurrent, and none will have any priority over the other.

Section 3.02. Rights of Third Parties on Resale. It is the obligation of the buyer to notify the Servicer of such resale transaction(s) but only if the Seller will be responsible for causing notations to be made in the books and records to reflect the change in ownership interest(s) resulting from such resale. If the Servicer is required to cause monthly remittances and reports to be made to the respective owners, then an additional service fee of .05 (one twentieth) of one percent per annum of the outstanding balance of said loans per month shall be payable for each subsequent buyer thereof. Such fee shall be deducted from each monthly remittance to each such subsequent buyer. If the Servicer receives a notification of an ownership sale less than 30 days before a remittance date as defined in Section 2.02, Seller's duties to remit and report as required by this section shall begin with the next succeeding remittance date.

## ARTICLE IV
## Insolvency (of Seller or Servicer) and Breach of Contract

Section 4.01. Transfer of Servicing: Triggering Events. In the event of any of the following: (1) the insolvency of the Seller or Servicer; (2) the filing by or against the Seller or Servicer of a petition under any provision of bankruptcy law, or of an assignment for the benefit of creditors; (3) the appointment by any public or supervisory authority of any person or firm in charge of the Seller or Servicer or the assets of either; (4) a breach by the Seller or Servicer of any covenant or agreement herein or in any Loan Identification Schedule(s), subject to section 4.02; or (5) the issuance by an appropriate public monitoring or supervisory authority of a cease and desist order or its equivalent against the Seller or Servicer or any of their directors and officers involving the safety, soundness or financial viability of, or involving actual or alleged violations of any consumer law or regulation,

Case Number: WC-2019-0544
Filed in Washington County Superior Court
Submitted: 10/23/2019 5:10 PM
Envelope: 2309387
Reviewer: Danielle K.

including but not limited to, the Truth-in-Lending Act, the Fair Housing Act, the Equal Credit Opportunity Act and the Real Estate Settlement Procedures Act, it is agreed that the Buyer shall automatically succeed to all rights, titles, status, and responsibilities which the Seller or Servicer may have regarding the holding and servicing of said loans and advances. Buyer shall have an option to exercise all of the powers herein above granted to the Seller or Servicer. In such event, said loans and all records thereof shall be delivered to Buyer, together with necessary or proper assignments, transfers, and documents of authority. Additionally, the Seller is affirmatively obligated to inform Buyer of the existence of any regulatory order.

Section 4.02. Right to Cure Breach of Warranty. In the event of a breach of the warranty set forth in Section 1.02(h)(2), the Seller shall have 30 days to cure such breach after written notification is sent in accordance with Section 6.07 to Seller by the Buyer.

## ARTICLE V
## Termination of This Agreement

Section 5.01. Loans Being Serviced. The buyer may, by delivering notice to Seller, terminate this Agreement as to loans being serviced if: (a) Seller fails to perform its obligations hereunder; (b) Seller or Servicer becomes insolvent or bankrupt or is placed under conservatorship or receivership; (c) Seller assigns or attempts to assign its rights and obligations hereunder, without written consent of Buyer and such consent to the transfer of servicing shall not be unreasonably withheld; and (d) in any event and without cause, upon delivering thirty (30) days' written notice and payment to Seller of a sum equal to 2.00% of the aggregate principal amounts then outstanding of all the loans subject to this Agreement.

Section 5.02. Future Acceptance of Loans. This Agreement may be terminated as to the future acceptance of loans by either party at any time upon delivering thirty (30) days' written notice of termination to the other party, but such termination shall not in any respect change or modify the obligation of Seller with respect to the servicing of the loan(s) already accepted, and Seller shall continue to be responsible for the servicing of such loan(s) unless Buyer shall act to terminate this Agreement in accordance with the provisions contained herein.

Section 5.03. Seller's Duties. Upon termination of this Agreement, Seller warrants that Servicer will account for and turn over to Buyer all funds collected under each loan sold hereunder, less only the compensation then due Servicer, and deliver to Buyer all records and documents that it may have in its possession relating to each such loan.

## ARTICLE VI
## Miscellaneous Provisions

Section 6.01. Agreement to Repurchase Loan(s).

(a) Misstatement of Material Fact. The Seller agrees, upon Buyer's written request made within 12 months from the date of the pertinent Loan Identification Schedule, to repurchase Buyer's interest(s) in the pertinent loan(s), if any misstatement of material fact, intentional or

otherwise, by Seller or loan debtor(s), is disclosed by actual inspection by Buyer or its representative, or otherwise. The repurchase price shall be for an amount equal to such loan's(s') unpaid principal, plus accrued interest, if purchased at par; or if purchased at a discount or premium, the repurchase price shall be adjusted by subtracting or adding, respectively, to the current unpaid principal the percentage of discount or premium used in the original purchase transaction. Buyer shall be reimbursed by Seller for any reasonable costs incurred in connection with its repurchase request. Seller shall repurchase said loan(s) within 30 days from the date of Seller's receipt of Buyer's written repurchase request. This provision shall not apply to private mortgage insurance company insured mortgages, unless any claim hereunder is denied by the insurance company.

(b) Breach of Covenant(s). Subject to Section 4.02 of this Agreement, if Seller or Servicer breaches any covenant made in this Agreement regarding a loan(s) the Buyer has purchased, Seller shall repurchase Buyer's loan(s) within 30 days from receipt of Buyer's written request for such repurchase. The repurchase price shall be for an amount equal to the unpaid principal, plus accrued interest, if purchased at par; or if purchased at a discount or premium, the repurchase price shall be adjusted by subtracting or adding, respectively, to the current unpaid principal the percentage of discount or premium used in the original purchase transaction. Buyer shall be reimbursed by Seller for any reasonable costs incurred with in connection with its repurchase request.

Section 6.02. "Doing Business" Registration and Fees. On request of Buyer, Seller shall arrange for appropriate registration and payment of any fee which might be required under the laws of the state where the security property is located, in connection with doing business by Buyer in such state. Seller's cost is to be reimbursed by Buyer upon submission of a statement.

Section 6.03. Purchase of Additional Loan(s). Pursuant to negotiations, the Seller may submit to the Buyer from time to time, at Seller's option, additional loan(s), and supply the Buyer with any information requested with respect to those interests. When the parties come to an agreement, a Loan Identification Schedule in the form attached hereto as Exhibit A shall be completely filled out and executed by both parties and delivered to Buyer. The Buyer shall thereupon remit payment for its loan purchase(s) in an amount equal to the principal amount, plus any accrued interest, due the Seller.

Section 6.04. Effect of ARTICLE and Section Headings. The ARTICLE and Section headings herein are for convenience only and shall not affect the construction of this Agreement.

Section 6.05. Document Contains Entire Agreement. This document contains the entire agreement between the parties hereto and cannot be modified in any respect except by an agreement in writing. This Agreement will remain in effect until the loans sold thereunder are liquidated completely, or at the option of Seller, if the principal balance is reduced to 5% of the aggregate amount of the loans at their initial funding, the then Seller has the right to repurchase any of the loan(s) sold under this Agreement for an amount equal to the then unpaid principal plus accrued interest, if purchased at par, or if purchased at a discount or premium, the repurchase price shall be adjusted by subtracting or adding, respectively, to the current unpaid principal the percentage of discount or premium used in the original purchase transaction.

Section 6.06. Severability. If any provision of this Agreement is held to be invalid, the legality and enforceability of all remaining provisions shall not in any way be affected or impaired, and this Agreement shall be interpreted as if such invalid provision was not contained herein.

Section 6.07. Notice. Unless otherwise specified herein, any written notice required to be given pursuant to this Agreement shall be sent by first-class mail and shall be sent to the principal business office of the Seller, Buyer or Service at the following addresses:

| | |
|---|---|
| If to Seller: | Boston Federal Savings Bank<br>17 New England Executive Park<br>Burlington, MA 01803 |
| Attention: | Anthony C. Rizzo |
| If to Buyer: | The Washington Trust Company<br>23 Broad Street<br>Westerly, RI 02891 |
| Attention: | Stephen M. Bessette |

Notice shall be deemed to have been given as of the date such notice was deposited in the United States mail, postage prepaid.

IN WITNESS WHEREOF, each party has caused its corporate seal to be affixed hereto and this instrument to be signed in its corporate name on its behalf by its proper officials duly authorized.

This __29th____ day of __April__, 2002

**Boston Federal Savings Bank, SELLER**

BY: Anthony C. Rizzo, Vice President

**The Washington Trust Company, BUYER**

[signature], SVP

BY: Stephen M Bessette
Senior Vice President